IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID PAUL BICKFORD,        *

    Petitioner,              *

v.                      *        Civil Action No. GLR-21-1561

WARDEN OF EASTERN        *
CORRECTIONAL INSTITUTION,
                           *

    Respondent.

                        ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner David Paul Bickford's Petition for Writ of Habeas Corpus (ECF No. 1). The matter is ripe for review, and no hearing is necessary. See R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2); Local Rule 105.6 (D.Md. 2023); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (noting that petitioners are not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons outlined below, the Petition will be dismissed, and the Court will issue a certificate of appealability on one of Bickford's claims.

### I.    BACKGROUND

**A.**    **Trial**

On April 14, 2016, Bickford was charged by bill of information in the Circuit Court for Washington County with twenty-seven counts related to the sexual abuse of his minor daughter, C.B. (State Ct. Rs. at 41−50, ECF No. 14-1). After a jury trial on January 3 and 4 of 2017, Bickford was convicted of one count of sexual abuse of a minor and twenty counts of video surveillance with prurient intent. (Jan. 4, 2017 Trial Tr. at 258:12−267:17,

ECF No. 14-3). Bickford was found not guilty of sexual solicitation of a minor. (Id. at

258:23). The Appellate Court of Maryland described the facts as follows:

> On December 14, 2015, Bickford's daughter—fifteen-year-old C.B. ("C.B."
> or "the victim")—went to the Hagerstown Police Department. She told police
> officers that she had been doing homework on her father's laptop computer
> and found several photos of herself in the bathroom of her home in
> Hagerstown, where she lived with her father. Some of the photos captured
> her partially or completely nude. Police questioned Bickford and ultimately
> confiscated several electronic devices, including Bickford's laptop, iPhone,
> and two external hard drives.
>
> In February of 2016, after police completed a forensic analysis of files stored
> on Bickford's electronic devices, Bickford was arrested and charged with (1)
> sexual abuse of a minor under Md. Code (2012 Repl. Vol., 2015 Supp.),
> Criminal Law Art. ("CL") § 3–602(b)(1); (2) sexual solicitation of a minor;
> (3) possession of child pornography; and (4) twenty-three counts of visual
> surveillance with prurient intent ("private place") under CL § 3–902(c). At
> trial, the State introduced into evidence several videos and other files
> recovered from Bickford's laptop computer, iPhone, and two external hard
> drives, as well as witness testimony from C.B. and the detectives and analysts
> who investigated C.B.'s case. Bickford also testified on his own behalf.
>
> At trial, C.B. testified that she had moved with her father from Martinsville,
> West Virginia to Hagerstown, Maryland sometime in August of 2015 and
> began attending high school there. She explained that her father decided to
> renovate parts of the house, including the family's only bathroom, where
> parts of the drywall were damaged. Sometime in October, C.B. noticed
> activity on her father's computer and TV. She testified that the TV appeared
> to show a "live-feed" video of the family's bathroom. C.B. entered the
> bathroom and found a small device in a hole in the wall between the shower
> and toilet. C.B. said that she went to her father and told him about the device,
> and that he told her that it was a "pipe alarm," which he had obtained from
> work, and that he would get rid of it.
>
> Both C.B. and Bickford testified that Bickford had often disciplined C.B. by
> taking away her iPhone. Bickford said that after they moved to Hagerstown,
> he had taken her phone from her multiple times and put it in an unlocked
> cupboard, but that he believed C.B. continued to use her phone when she was

not supposed to have it. He testified that, during one of the times he had taken C.B.'s iPhone, he went through her messages and found that C.B. was messaging a boy named John on an application called Snap[c]hat. Although he could not find any inappropriate pictures on C.B.'s phone, Bickford testified that he found an ongoing, sexual text conversation between C.B. and John that indicated to Bickford that John had been asking C.B. to send nude pictures of herself to him. According to Bickford, the content of the messages indicated that C.B. had complied and sent inappropriate pictures to John. C.B. conceded during her testimony that she sent John "partially clothed" pictures and that her father had punished her by taking her phone away from her again. Bickford's primary contention at trial was that his daughter indicated to him that she took the pictures of herself in the family's bathroom. He testified that he set up a camera in the bathroom in order to catch her on her phone.

C.B. testified that, the following December, while she was using her father's laptop computer to do her homework, she came across a photo album of pictures of herself in the family's bathroom, some of which showed her completely nude. She was able to locate the folder (labeled "CHIDE") where at least some of the images were stored. She said that after discovering the photos, she "tried to stay calm" and called her mother. They made plans for her mother to pick her up to go to lunch the following day. C.B. said that after she got off of the phone, she felt awkward and tense toward her father, and that he asked her what was wrong. C.B. said she confronted her father about the photos, and that he told her that he was no longer satisfied with pornography and wanted to see a virgin. According to C.B., her father acted nervous prior to C.B. leaving to go to lunch with her mother and that he asked her not to tell her mother about his reason for setting up the camera. C.B. said that, at some point while she was in her mother's car, Bickford told her mother that he had set up a camera in their bathroom because he believed C.B.'s older brother, who had recently moved in with them, was doing drugs in the bathroom and that he was not trying to monitor C.B.

The prosecutor asked C.B. a number of questions related to Bickford's conduct and remarks during the few years prior to C.B.'s discovery of the hidden camera. She testified that when she was approximately eleven or twelve years old and she and her father still lived in West Virginia, "He'd ask me if I'd ever . . . If I would ever have sex with him." C.B. said that, around that same time period, after she would get into the shower, Bickford often got into the shower with her. She explained that, when she was around

the age of thirteen, she started telling Bickford no when he would ask to shower with her and that she wanted to shower alone.

C.B. also described two other interactions with Bickford of a sexual nature. One such instance occurred after her mother had taken her shopping for new clothes. C.B. testified that she showed Bickford her new outfits and he told her that watching her try on clothes gave him a "boner," which she interpreted to mean "erection." During Bickford's direct examination testimony, he denied ever making that statement to C.B. and said that, at most, he would sometimes tell C.B. that she looked nice or "sexy," because he wanted her to feel good about her appearance. In addition, C.B. said that she asked Bickford for her iPhone back after he had taken it away, and that he said that he would return the phone to her if she gave him a "blow job." Bickford testified that he never requested that C.B. perform oral sex on him. He explained that, in one instance, he became irritated after C.B. repeatedly asked for her iPhone back, and that he told her to "suck it" as a way of saying no.

During the State's presentation of its case, Sergeant Howard testified as an expert witness in data recovery and computer forensics. He stated that he had recovered the remnants of a folder entitled "CHIDE" on Bickford's laptop, which included numerous "bathroom videos." He located both short and long clips cut from several original videos, and that all of the clips featured the same young girl while she was getting in and out of the shower and sitting on the toilet. He testified that the videos appeared to have been originally recorded on Bickford's iPhone, which was, in turn, recording a screen of another devices, such as a TV displaying a "live feed." He explained that the "bathroom videos" appeared to have been created between October and December of 2015, and that the editing of the videos caused a temporary file to remain on the computer even after someone had attempted to delete the CHIDE folder. Although the camera appeared to be positioned near the floor, pointing upward, and at an angle that often did not show the person's face captured in the video, C.B. identified herself in most of the videos shown to her at trial. Regarding one video in which a "Tinkerbell" blanket covered the body of the person in the shot, C.B. explained that she started bringing the blanket with her to cover herself while getting in and out of the shower in case there was a camera.

Detective Duffy, who was admitted as an expert in cellular analysis and data recovery, testified that he recovered the online browsing history from

Bickford's iPhone. He indicated that Bickford had viewed numerous pornographic websites and videos relating to father-daughter sex and incest. Further, he recovered evidence that Bickford had searched for sites of this nature, and that he had performed Google searches using search terms such as "Do girls want to have sex with their dad?" During his testimony, Bickford's explanation for his searches and online activity related to father-daughter sex was that it was the fastest way to get to "Japanese pornography." Sergeant Howard also testified regarding a video he recovered from Bickford's external hard drives that were originally recorded on Bickford's iPhone. The forty-eight second video showed what appeared to be an adult male rubbing lotion or cream on a female child's buttocks from behind her. He testified that the video prominently featured the girl's buttocks, anus, and vagina, and that, at one point, she covers her vagina with her hand and then subsequently removes it. C.B. testified that, when she still living with her father in West Virginia, Bickford told her to undress after they arrived home from visiting family in New Jersey so that he could put cream on flea bites on her body caused by being around her uncle's dogs. C.B. said that Bickford told her that he was using the flashlight on his phone and that she did not know that he was recording. She denied asking Bickford to put cream on her and testified that she was thirteen years old at the time and old enough to apply the cream herself. When Bickford testified, he claimed that the reason he had the video was that he was unfamiliar with how to use the flashlight function on his new iPhone, and that he knew the light would come on in the video function. He said that he deleted the video a week or so later when he realized it was still on his phone and that the video had been transferred to his hard drives during a data recovery of his devices.

Bickford v. State, No. 95, Sept. Term 2017, 2018 WL 2215485, at *1–3 (Md.Ct.Spec.App. May 15, 2018).

On March 27, 2017, the Circuit Court sentenced Bickford to twenty-five years, all but fifteen years suspended. (Sentencing Tr. at 35:12, ECF No. 14-4). Upon release, Bickford will serve five years of supervised probation and register as a tier 3 lifetime sex offender. (Id. at 35:19, 36:4).

**B.**    <u>**Direct Appeal**</u>

Bickford noted a direct appeal to the Appellate Court of Maryland,[1] which entered an unreported opinion on May 15, 2018. <u>Bickford</u>, 2018 WL 2215485; (State Ct. Rs. at 109−145). The court affirmed Bickford's conviction for sexual abuse of a minor. However, the court vacated the convictions on the twenty counts of video surveillance with prurient intent, reasoning that the statute does not cover video surveillance that occurs in a private residence. (State Ct. Rs. at 129−145). Because the Circuit Court merged the counts for video surveillance with prurient interest with the count for sexual abuse of a minor for sentencing purposes, the Appellate Court of Maryland declined to remand the case for resentencing. (<u>Id.</u>).

Bickford sought a writ of certiorari with the Supreme Court of Maryland, (<u>Id.</u> at 147−152), which was denied on August 31, 2018. (<u>Id.</u> at 1153).

**C.**    <u>**Post-Conviction Proceedings**</u>

On October 19, 2018, Bickford initiated post-conviction proceedings by filing a pro se petition under Maryland's Uniform Postconviction Procedure Act ("UPPA"), Md. Code Ann., Crim. Proc. § 7-101 <u>et seq.</u>; (<u>id.</u> at 11). Counsel appeared on Bickford's behalf, and the Circuit Court held a hearing on October 8, 2019. (<u>See</u> Tr. Postconviction Hr'g at 1, ECF No. 14-5). Bickford, his trial counsel, and his appellate counsel testified. (<u>See</u> <u>id.</u>)

---

[1] At the time Bickford's case was litigated in the Maryland state courts, the Appellate Court of Maryland was named the "Court of Special Appeals" and the Supreme Court of Maryland was named the "Court of Appeals of Maryland." At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of both courts. The name change took effect on December 14, 2022.

The Circuit Court denied post-conviction relief on August 13, 2020. (State Ct. Rs. at 213−229). Bickford filed an application for leave to appeal. (Id. at 230−243). The Court of Special Appeals summarily denied his application for leave on February 8, 2021, with the mandate issuing on March 12, 2021. (Id. at 244−246).

**D.      Federal Habeas Petition**

In his Petition, Bickford argues: (1) his conviction for sexual abuse of a minor was not supported by sufficient evidence; (2) trial counsel was ineffective because he failed to object when the circuit court judge relied on impermissible sentencing factors; (3) trial counsel was ineffective because he failed to file a motion to suppress challenging the search and seizure of his cell phone, laptop, and residence; (4) appellate counsel was ineffective because he failed to raise the issue of the impact of the vacated convictions on the viability of the conviction for sexual abuse of a minor; (5) appellate counsel was ineffective because he failed to raise the issue of improper jury instruction for video surveillance for prurient interest; (6) appellate counsel was ineffective for failing to raise the issue of inconsistent verdicts. (Pet. Writ Habeas Corpus ["Pet."] at 13−21, ECF No. 1).

Respondent Warden of Eastern Correctional Institution filed an Answer to the Petition on November 15, 2021, contending that Claim One is procedurally defaulted and all other claims lack merit. (ECF No. 13). Bickford filed a Reply on December 10, 2021. (ECF No.16).

## II.    DISCUSSION

### A.    __Procedural Default__

Before seeking review under 28 U.S.C. § 2254, a person in custody must exhaust remedies available in state court by presenting each claim to the appropriate state court. A claim is procedurally defaulted when a petitioner has failed to present the claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal. See Coleman v. Thompson, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); Murray v. Carrier, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); Murch v. Mottram, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction proceedings); Bradley v. Davis, 551 F.Supp. 479, 481 (D.Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

A procedural default may also occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." Yeatts v. Angelone, 166 F.3d 255, 260 (4th Cir. 1999). As the United States Court of Appeals for the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Coleman, 501 U.S. at 731–32). Under Maryland law, "an allegation of error is waived when a petitioner could have made, but intelligently and knowingly failed to make the allegation . . . in a prior [post-conviction]

petition." Md. Code Ann., Crim. Proc. § 7-106(b). A rebuttable presumption exists that this waiver was knowing and intelligent. Id. § 7-106(b)(2).

The Warden contends that Claim One is procedurally defaulted because it was dismissed under an independent and adequate state ground. (Answer Resp. Habeas Pet. ["Answer"] at 20−27, ECF No. 13). However, "state procedural default bars federal review only when the state court clearly and expressly states its reliance on [state procedural default]." Ylst v. Nunnemaker, 501 U.S. 797 (1991). The record reflects that the Appellate Court of Maryland made only a passing reference to the fact that the claim was "not properly before us." The comment appears to be directed at Bickford's failure to make an adequate showing for relief. (State Ct. Rs. at 144). The remainder of the discussion is dedicated to the merits of the sufficiency of evidence claim and Bickford's claim is not rejected on any state procedural rule. Accordingly, the Court concludes that the Appellate Court of Maryland did not "clearly and expressly" dismiss Claim One on a state procedural bar, and it is not procedurally defaulted.

**B.     The Petition's Merits**

**1.     Standard for Relief Under 28 U.S.C. § 2254**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); Bell v. Cone, 543 U.S. 447, 455 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions "the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted); see also

White v. Woodall, 572 U.S. 415, 419–20 (2014) (finding that a state prisoner must show that the state court ruling on the claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011))).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (citation omitted).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable

application of federal law is different from an <u>incorrect</u> application of federal law." <u>Id.</u> (quoting <u>Williams</u>, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010) (citing <u>Rice v. Collins</u>, 546 U.S. 333, 341–42 (2006)). Thus, "even if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. <u>Id.</u> (internal quotation marks and citation omitted). Similarly, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (quoting <u>Williams</u>, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." <u>Sharpe v. Bell</u>, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." <u>Id.</u> (quoting <u>Wilson v. Ozmint</u>, 352 F.3d 847, 858 (4th Cir. 2003)).

### 2.     Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984); Buck v. Davis, 580 U.S. 100, 119 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland, 466 U.S. at 687–88. See Williams v. Taylor, 529 U.S. 362, 390 (2000). That test requires the petitioner to show that (a) his counsel's performance was deficient, and (b) he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687; Buck, 580 U.S. at 120.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Harrington v. Richter, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690). The "first prong sets a high bar." Buck, 580 U.S. at 119. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" Id. (quoting Strickland, 466 U.S. at 690). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." Id. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Buck, 137 S.Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings." Strickland, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. Id. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." Berghuis v. Thompkins, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in Strickland, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. Nor must a court address both components if one is dispositive. Jones v. Clarke, 783 F.3d 987, 991–92 (4th Cir. 2015) (citing Strickland, 466 U.S. at 697). Because either prong is fatal to a petitioner's claim, "there is no reason

for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S. at 697.

### i.      Claim One: Sufficiency of Evidence

In Claim One, Bickford contends the evidence was insufficient to sustain his conviction for sexual abuse of a minor. (Pet. at 5, 13−16). Specifically, Bickford argues that because he was found not guilty of solicitation, and the video surveillance with prurient interest convictions were vacated, then he cannot be guilty of sexual abuse of a minor. <u>Id.</u> However, the Appellate Court of Maryland found that the evidence at trial supported the conviction:

> Although Bickford avers in his brief that "[t]he evidence was insufficient as a matter of law on any and all counts that depended upon video surveillance in the bathroom," he fails to provide any meritorious reason why the evidence was insufficient to support his conviction for sexual abuse of a minor. See CL § 3-602(b)(1). As we explained in Schmitt, to show exploitation under § 3-602, "[t]he State need only prove, beyond a reasonable doubt, that the parent or person having temporary or permanent custody of a child took advantage of or unjustly or improperly used the child for his or her own benefit." 210 Md. App. at 499 (quoting Brackins v. State, 84 Md. App. 157, 162 (1990)). A jury could reasonably conclude that Bickford recorded his daughter getting in and out of the shower for his own sexual gratification, particularly in light of the other evidence suggesting that Bickford was sexually aroused by his daughter, sought out pornographic materials depicting father-daughter sex, and requested that she perform oral sex on him, in addition to C.B.'s testimony that Bickford expressly stated his interest seeing her naked when she confronted him about the camera. Accordingly, even if the issue were properly before us, we would conclude that the evidence was more than sufficient to support the jury's finding that Bickford sexually exploited his daughter.

(State Ct. Rs. at 144−45).

Sufficiency of the evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012). As explained in <u>Coleman</u>:

> First, on direct appeal, it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.

<u>Id.</u> (internal quotation marks and citation omitted); <u>see also</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (holding relevant standard is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

As noted by the Appellate Court of Maryland, the jury reasonably could have concluded from the evidence adduced at trial that Bickford exploited his minor daughter for his sexual gratification. Bickford did not dispute that he surreptitiously installed a video camera in the bathroom to surveil C.B., (Jan. 4, 2017 Trial Tr. at 94:5), and searched internet sites dedicated to father-daughter incest, (<u>Id.</u> at 108−09; Jan. 3, 2017 Trial Tr. at 164:23−166:14, ECF No. 14-2). Bickford denied it, (Jan. 4, 2017 Trial Tr. at 119:5), but the jury reasonably could have believed C.B.'s testimony that he installed the camera because he was bored with online pornography and wanted to see a virgin. (<u>See</u> <u>id.</u> at 252:2).

Considering this evidence and the double deference owed to the state courts in a sufficiency of evidence analysis, the Court cannot say that the Appellate Court of Maryland's conclusion was unreasonable. Claim One is without merit and is dismissed.

### ii.    Claim Two: Ineffective Assistance of Trial Counsel at Sentencing

In Claim Two, Bickford contends that his trial counsel was ineffective because he failed to object to impermissible sentencing considerations. Particularly, Bickford alleges that the trial court deviated from the sentencing guidelines with an upward departure because he elected to go to trial. The postconviction court denied the claim, finding that Bickford failed to show deficient performance and failed to show prejudice because he failed to urge the issue on direct appeal. (State Ct. Rs. at 218−19).

At the sentencing hearing, the trial court made the following comment:

> [A]ssuming that the Guidelines are seven to thirteen years as Ms. Talbert came up with, you put your daughter through having to testify in this case. I don't think the Guidelines account for that. There is frequently a benefit given to the defendant. You know, alright, I did this horrible thing to this poor child. You know, if I plead guilty then he or she won't have to testify and go through all of that again. I don't know that anybody in the whole courtroom had nothing but abject sympathy and horror for imagining ourselves in your daughter's situation, having to get on that witness stand in front of me, and you, and a jury of twelve people and spectators and whoever they might be that might want to be in the courtroom, as well as courtroom personnel and having to point to that video. "Yeah, that's me. I can tell. That's…that video is also me. I was doing that."
>
> So, the trauma to her wasn't just in the videoing of her, but in the compelling of her to have to testify in this case. And I think as a sentencing judge, that's a … that's a big factor that would cause me to exceed the Guidelines, ah, even if they are seven to thirteen years. So, the sentence is going to be twenty-five

years in the Division of Correction for the sexual abuse of a
minor. I am going to impose fifteen years of that and suspend
ten.

(Sentencing Tr. at 34:13−35:15). Bickford's trial counsel, David Pembroke, testified at the

postconviction hearing that he did not object to the trial court's comments because it was

his impression that in context, the comments were not impermissible because the court was

referencing victim impact. (Tr. Postconviction Hr'g at 71:4−72:4).

In Maryland, a trial judge has broad discretion in sentencing. <u>Abdul-Maleek v. State</u>,

43 A.3d 383, 390 (Md. 2012) (citing <u>Jones v. State</u>, 997 A.2d 131, 134−35 (Md. 2010)).

Maryland appellate courts will review a sentence if considering: "(1) whether the sentence

constitutes cruel and unusual punishment or violates other constitutional requirements; (2)

<u>whether the sentencing judge was motivated by ill-will, prejudice or other impermissible</u>

<u>considerations</u>; and (3) whether the sentence is within statutory limits." <u>Jackson v. State</u>,

772 A.2d 273, 277 (Md. 2001) (emphasis in original).

In Maryland, an impermissible sentencing consideration is employed if the trial

court enters a more severe sentence because the defendant exercised his right to go to trial.

<u>Johnson v. State</u>, 336 A.2d 113, 117 (Md. 1975). The appellate court will remand a case

for resentencing if the trial court's comments "lead a reasonable person to infer that [the

court] might have been motivated" by an impermissible consideration. <u>Jackson</u>, 772 A.2d

at 281. Considering Maryland's standard, reasonable jurists would not disagree the trial

court's comments at Bickford's sentencing hearing could have led a reasonable person to

infer that the trial court <u>might</u> have impermissibly increased Bickford's sentence based on

his decision to go to trial instead of pleading guilty.

In any event, the postconviction court found that trial counsel's failure to object had no impact on Bickford's ability to appeal his sentence. Citing Abdul-Maleek, 43 A.3d at 390, the postconviction court found that the Appellate Court of Maryland could exercise its discretion to review defendant's unpreserved sentencing claim. Thus, the postconviction court concluded that Bickford was not prejudiced by his counsel's failure to object. Notably, Bickford has not alleged that his appellate counsel was ineffective for failing to raise the sentencing issue on appeal.

The postconviction court's opinion overlooked the discussion in Abdul-Maleek that Appellate Court of Maryland's decision to review an unpreserved sentencing issue was an exception to the general rule:

> [W]e have consistently recognized that allegations of impermissible considerations at sentencing are not "illegal sentences" subject to collateral or belated review and "must ordinarily be raised in or decided by the trial court . . . [A]nd, subject to the appellate court's discretion under Maryland Rule 8–131(a), the defendant is not excused from having to raise a timely objection in the trial court." . . . . We have explained time and again that Rule 8–131(a) grants an appellate court discretion to consider issues deemed to have been waived for failure to make a contemporaneous objection . . . .This discretion, however, should be exercised with caution . . . . In deciding whether to review an issue that has been waived, we should "[f]irst . . . consider whether the exercise of . . . discretion will work unfair prejudice to either of the parties . . . .Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice.

43 A.3d at 389. If Bickford had appealed, it was not a foregone conclusion that the Appellate Court of Maryland would have reviewed his sentencing claim.

Respecting the deferential standard applicable to ineffective assistance of counsel claims on habeas review, the Court will defer to the postconviction court's conclusion that Bickford was not prejudiced by his trial counsel's failure to object and deny relief on this claim. Arguably, there is a possibility that the postconviction court's finding may constitute an unreasonable application of <u>Strickland</u> to the facts of Bickford's case. Since: (1) Maryland prohibits the trial court from increasing a sentence based on the defendant's decision to go to trial, (2) Maryland's standard for remand of impermissible sentencing claims views the record in the light most favorable to the defendant, and (3) the Maryland appellate courts generally do not review unpreserved sentencing claims, it can be considered a "close call" as to whether the state courts' decision denying relief involved an unreasonable application of <u>Strickland</u>.

Although the Court defers to the postconviction court's conclusion that Bickford's ineffective assistance of counsel claim was without merit, it is reluctant to conclude that reasonable jurists would not find its assessment of the claim debatable or wrong. The Court concludes the issue deserves further review sufficient to warrant a certificate of appealability under 28 U.S.C. § 2253(c)(2). Accordingly, the Court certifies the following issue for appeal: was Bickford's trial counsel ineffective for failing to object to the trial court's comments at sentencing suggesting it was departing from the sentencing guidelines based on his decision to go to trial instead of pleading guilty?

### iii. Claim Three: Ineffective Assistance of Trial Counsel at Pretrial

Next, in Claim Three, Bickford contends that his trial counsel was ineffective for failing to file a motion to suppress the search of his home and the seizure of his cell phone

and laptop. The postconviction court found that the claim lacked merit, relying on trial counsel's testimony that there were no viable arguments to be made. (State Ct. Rs. at 219−20). The record reflects that the search of Bickford's home was conducted after the Hagerstown Police Department obtained a valid warrant. (Jan. 3, 2017 Trial Tr. at 134:19−136:13). Bickford surrendered his cell phone and laptop to Hagerstown Police Department officers at his place of employment. (Id. at 149:19−152:10). His trial counsel testified at the postconviction hearing that the seizure satisfied the warrant exception for evidence that might be destroyed. (Tr. Postconviction Hr'g at 54:9−55:1).

"[W]here an ineffectiveness claim is based on counsel's failure to file a motion to suppress," under the "deficient performance prong of Strickland, it is enough to call into question counsel's performance that an unfiled motion would have had 'some substance.'" Grueninger v. Dir., VA Dep't of Corr., 813 F.3d 517, 524–25 (4th Cir. 2016). The prejudice prong in such cases has two components, (1) "the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial." Id. (citing Kimmelman v. Morrison, 477 U.S. 365, 375, (1986)). Bickford has not identified any grounds upon which a motion to suppress would have had any substance or would have likely been granted. Because Bickford cannot meet the Strickland standard, the postconviction court's dismissal of Claim Three is neither contrary to nor an unreasonable application of federal law.

### iv. Claims Four, Five, and Six: Ineffective Assistance of Appellate Counsel

In the context of ineffective assistance of appellate counsel, to establish <u>Strickland</u>'s performance prong, a movant must first show that his "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. Counsel is "not obligated to assert all nonfrivolous issues on appeal," <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000), and courts presume that the appellate counsel "decided which issues were most likely to afford relief on appeal," <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993). The "prejudice" element of the <u>Strickland</u> standard is satisfied by a showing of a reasonable probability defendant would have prevailed on appeal but for appellate counsel's deficient performance). <u>Smith v. Robbins</u>, 528 U.S. 259, 285–86 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Id,</u> at 288 (quotation marks and citation omitted).

In Claim Four, Bickford contends that his appellate counsel, Peter Rose, was ineffective for failing to raise the issue of the impact of the vacated convictions on the viability of the conviction for sexual abuse of a minor. The postconviction court denied the claim, concluding that the jury was instructed to consider each charge separately. (Jan. 3, 2017 Trial Tr. at 227). As noted by the Appellate Court of Maryland on direct appeal, the evidence at trial was sufficient to sustain a conviction for sexual abuse of a minor. (State Ct. Rs. at 144−45).

The record reflects that Bickford's appellate counsel did argue that the evidence was insufficient to establish sexual abuse of a minor, but the Appellate Court of Maryland found the argument unavailing. (<u>See id.</u>). At the postconviction hearing, Bickford's appellate counsel testified that he was unaware of any case law to support a contention that the

vacated convictions tainted the verdict for sexual abuse of a minor. (Tr. Postconviction Hr'g at 42:12−44:24).

Bickford provides the Court with no authority to support the allegation that his appellate counsel was deficient and thus, has failed to overcome the presumption his counsel was effective. Claim Four is without merit and is dismissed.

In Claim Five, Bickford contends that his appellate counsel was ineffective for failing to object to the jury instruction for video surveillance with prurient intent. Bickford alleges that he was prejudiced by the instruction even though the counts were vacated because the Appellate Court of Maryland would have also vacated the conviction for sexual abuse of a minor.

In Claim Six, Bickford contends that his appellate counsel was ineffective for failing to appeal the convictions because they were inconsistent. The postconviction court denied the claim based on appellate counsel's testimony that the claim was not preserved for the record, the fact that there was no prejudice because the jury was instructed to consider the counts separately, and the verdicts were not legally inconsistent. (State Ct. Rs. at 225−29).

Bickford has failed to show that the postconviction court's dismissal of Claims Five and Six is contrary to or an unreasonable application of Strickland. The evidence at trial independently sustained his conviction for sexual abuse of a minor. In short, there is no support for Bickford's contention that the reversal of his convictions for video surveillance with prurient intent should have resulted in a reversal of his conviction for sexual abuse of a minor. Claims Five and Six lack merit and are dismissed.

### C.    Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." Id. at 338.

As discussed above, as to ineffective assistance of counsel relating to the issue of the impermissible sentencing consideration, the prevailing legal standard of deference to the state courts' conclusion requires this Court to deny Bickford's claim. However, the issue presented in Claim Two is "adequate to deserve encouragement to proceed further." Id. at 336. Therefore, the Court will issue a certificate of appealability, limited to the question of whether Bickford's trial counsel was ineffective for failing to object to the trial court's comments at sentencing suggesting it was departing from the sentencing guidelines based on his decision to go to trial instead of pleading guilty. A certificate is denied on all other claims.

### III.   CONCLUSION

For the foregoing reasons, Bickford's Petition for Writ of Habeas Corpus will be dismissed, and a certificate of appealability will be issued on Claim Two. A separate Order follows.

So ordered this 19th day of October, 2023.


_____/s/_____
George L. Russell, III
United States District Judge